Contadina Foods, Inc. (formerly Hershel California Food Products Company) successor to Matmor Canning Company, Inc. v. Commissioner.
Contadina Foods, Inc. v. Commissioner
Docket No. 89826.
United States Tax Court
T.C. Memo 1962-110; 1962 Tax Ct. Memo LEXIS 200; 21 T.C.M. (CCH) 602; T.C.M. (RIA) 62110; May 3, 1962
*200 Walter G. Schwartz, Esq., for the petitioner. Joseph D. Holmes, Jr., Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion MURDOCK, Judge: The Commissioner determined a deficiency in income tax of $16,857.16 for the fiscal year ended November 30, 1950, and one of $49,506.06 for the year ended November 30, 1951. The only issue for decision is whether the Commissioner erred in disallowing for 1951 a part of a claimed net operating loss carry-back from 1952. Decision of this issue depends entirely upon the value of "96/6" tomato paste to be used as the starting point in computing the market value of this item in the closing inventory for November 30, 1952. The petitioner reported on its 1952 return that this value was $6.50 per case. The Commissioner, in determining the deficiency, used $6.75 as the proper amount. Findings of Fact The taxpayer was, during the tax years, Matmor Canning Company. It was organized in August 1941 and merged with Contadina Foods, Inc. (formerly Hershel California Food Products Company) in June 1953. Matmor's returns for the tax years were filed at San Francisco. It used an accrual method of accounting and valued its *201 inventories of canned goods at the lower of cost or market. Hershel was organized about 1917. Madonna Foods, Inc., was organized in 1949. The three corporations, Hershel, Matmor and Madonna, had substantially the same stockholders and all were engaged in canning products in California, including tomato paste. Matmor sold its products through brokers located in various places in the United States. The item here in controversy is tomato paste packed in the commercial size, 6 ounce cans 96 to a case, and referred to herein as 96/6 tomato paste. Approximately 95 percent of all tomato paste produced in the United States is canned and packed in California. Tomatoes reach maturity in California during the middle of August, and at this time they are picked and transported to the canneries for processing. The tomato canning season in California extends from early August to late October. The beginning and the end of the canning season varies within the period above named, depending upon when the tomatoes reach maturity and are ready for packing. The total pack of 96/6 tomato paste for the State of California and for various packers in that State were as follows during the August-October *202 period in the respective years indicated: Total
Hunt
California
Matmor
Foods, Inc.
Hershel
Madonna
Pack
1949
1,623,137
355,207
43,695
307,638
Not Available
1950
1,409,843
293,273
13,130
241,512
Not Available
1951
4,026,536
669,780
668,333
547,512
472,909
1952
2,773,775
404,075
686,168
432,377
222,091
Stanislaus
Aron
Thornton
San Jose
Gangi Bros.
Food
Canningco.
Canning Co.
Canning Co.
Packing Co.
Products Co.
1949
177,486
109,689
79,074
68,321
39,123
1950
165,266
85,359
59,000
40,337
41,202
1951
285,732
122,373
136,299
79,861
84,512
1952
149,473
105,098
23,277
20,078
26,942 The following table shows the prices per case at which 96/6 tomato paste was sold by various packers during the period August 1951 through August 1952: Hunt - $7.50 from August 1951 into January 1952, $6.75 from January through May 1952; some at $6 and some at $5.75 during June, July and August 1952. Matmor - from a high of $8.18 in September 1951, a gradual decline to a low of $6.76 in August 1952. Hershel - from a high of $8.28 in September 1951, a gradual decline *203 to a low of $7.09 in August 1952. Madonna - from a high of $8 in September 1951, a gradual decline to a low of $6.96 in March 1952 and thereafter the price varied between $7.02 and $7.13. Aron - high $8.10 in August 1951, a gradual decline to $6.79 in August 1952. Gangi - high $7.85 in August 1951 to $6.06-7 in June, July and August 1952. Thornton - high $7.94 in August 1951 - low $6.40 in August 1952. The opening prices announced for the 1952 pack of 96/6 tomato paste by certain major California packers were as follows: Date An-
Price Per
Packer
nounced
Case
Hershel, Matmor and Ma-
donna
Not shown
$7.00
Thornton Canning Co.
Not shown
6.75
Gangi Brothers Packing
Co.
Not shown
6.75
Flotill Products, Inc.
Sept. 20, 1952
6.75
Aron Canning Co.
Not shown
6.75
Hunt Foods, Inc.
Sept. 3, 1952
6.35
The following shows the quantity of 96/6 tomato paste sold by Matmor during the period from October 1952 to June 19, 1953, and the average price per case: Average
Cases
Per Case
October 1952
46133
$7.06
November
Not Avail-
able
6.98
December
9158
7.20
January 1953
23311
6.75
February
18294
6.62
March
25013
6.75
April
15341
6.52
May
17640
6.66
June 1-19
13037
6.65
*204 Hunt became a major participant in the tomato paste industry in 1951 and 1952. It advertised extensively and made price and terms concessions which affected others in the field. Other canners, including the Hershel group, filed a suit to enjoin Hunt from engaging in unfair and illegal practices but later withdrew the suit. Producers of tomato paste try to dispose of from 25 to 30 percent of their current pack during September, October and November, but Matmor was not able to move that much in those months in 1952. The certified public accountant who prepared the Matmor return for 1952 and assisted in closing its books for that year entered $6.75 on his work sheets as the 96/6 tomato paste figure for computing the inventory value of that item. He then consulted the President-General Manager of Matmor who directed him to substitute $6.50 for the larger figure representing value. The Commissioner, in determining the deficiency, used $6.75 as the value of this item in computing the 1952 closing inventory. All stipulated facts not set forth above are incorporated herein by this reference. Opinion Both parties agree that market is lower than cost as of November 30, 1952, for *205 96/6 tomato paste. The petitioner's counsel stated at the trial: Now, normally, Your Honor, a difference of twenty-five cents or thirty-five a case of tomato paste in closing inventory would make relatively little difference because it would go into the [opening] inventory of the following year and it would only be a question of which year we would be taxed in. However, because of a net operating loss carry-back, excess profit taxes are involved, and therefore, the question of the exact value of the inventory as of this November 30th, 1952, date becomes more important than it would normally be. The petitioner argues in brief for use of a value of $6.35 although no such contention is made in its pleadings. However, the decision need not turn on this inadequacy, since the record as a whole does not justify the use of that amount. Matmor, so far as this record shows, never sold any of the 96/6 tomato paste on hand at November 30, 1952, as low as $6.35 a case or even as low as $6.50 a case, the value used in the 1952 return. Its President-General Manager testified that Matmor was afraid to reduce its price to meet Hunt's for fear Hunt would go lower and also that it could not afford *206 to sell lower than it did sell. The rather clear implication is that Matmor never intended to meet Hunt's price and eventually disposed of the inventory in question at prices above and mostly well above $6.50 per case. Matmor's announced price of $6.75 and its average prices of $7.06 for October, $6.98 for November and $7.20 for December 1952 and $6.75 in two of the first three months of 1953 strongly support the determination of the Commissioner, if support is needed. That determination of the Commissioner is presumed to be correct and the evidence as a whole fails, by a substantial margin, to overcome that presumption or to justify this Court in overturning that presumption by a finding that $6.50 or $6.35 is the proper amount to represent value as of November 30, 1952, for closing inventory purposes. The stipulations settle all other issues. Decision will be entered under Rule 50.